# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JOHNATHAN TYRONE PINKNEY,

     Plaintiff,

     v.

MD ANDREW MOULTRIE,
RNP OLADIPO OLALEYE and
NP NGOZI M. OKUDOH,

     Defendants.

Civil Action No. TDC-18-3895

## MEMORANDUM OPINION

Johnathan Tyrone Pinkney, an inmate confined at Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland, has filed a civil action for monetary damages and disciplinary action against Dr. Andrew Moultrie, Registered Nurse Oladipo Olaleye, and Nurse Practitioner Ngozi M. Okudoh, alleging unconstitutionally deficient medical care during his incarceration at Patuxent Institution in Jessup, Maryland. Construed liberally, the Complaint alleges that Defendants' failure to diagnose Pinkney with pulmonary sarcoidosis and to provide appropriate medication over an 18-month period constituted deliberate indifference to a serious medical need in violation of the Eighth Amendment to the United States Constitution and medical negligence under Maryland law.

Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which is fully briefed. For his part, Pinkney has filed a Motion for Appointment Counsel, ECF No. 14. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Pinkney's

Motion for Appointment of Counsel will be DENIED, and Defendants' Motion for Summary Judgment will be GRANTED.

## BACKGROUND

Pinkney has a medical history of pulmonary sarcoidosis, a condition associated with increased immune system activity causing clusters of immune cells called granulomas to infiltrate various organs and lymph nodes. While it most often affects the lungs, sarcoidosis can affect any organ in the body. Among the symptoms of the disease are coughing, shortness of breath, night sweats, joint pain, and fatigue. However, at the early stages, the disease may produce few signs and symptoms, and its symptoms may mimic those of other disorders. Thus, the disease is difficult to diagnose, and many patients are diagnosed only because a chest x-ray is taken for another reason. Diagnosis of sarcoidosis is made when the statistical likelihood of alternative diagnoses becomes too small to warrant further investigation.

In May 2016, Pinkney had a persistent dry cough for which he was prescribed guaifenesin, an expectorant that loosens congestion and makes it easier to cough out the material. In July 2016, he was provided with an albuterol inhaler to help his breathing. A chest x-ray, which was ordered in July 2016 and completed on August 10, 2016, showed infiltrate in the upper bilateral lobes of Pinkney's lungs for which he was prescribed antibiotics to address a possible inflammatory infection. A follow-up x-ray on September 9, 2016 continued to show upper lobe infiltrate.

In October 2016, Dr. Andrew Moultrie, Pinkney's treating physician, ordered another chest x-ray and decided to send Pinkney to the University of Maryland Medical System ("UMMS") for a pulmonary evaluation. That evaluation, which occurred on November 10, 2016, produced inconclusive results, noting the possibility of sarcoidosis, lymphoma, or infection. UMMS therefore recommended a CT scan and bronchoscopy.

In March 2017, the recommended CT scan of Pinkney's chest revealed results highly suggestive of pulmonary sarcoidosis. In June 2017, Pinkney received another pulmonary evaluation, a bronchoscopy, and a transbronchial biopsy. The results were inconclusive. Accordingly, in July 2017, Pinkney received another procedure, an endobronchial ultrasound ("EBUS"), which showed non-necrotizing granulomatous lymphadenitis with no sign of malignant cells, conditions consistent with sarcoidosis. As a result, UMMS specialists recommended that Pinkney receive the medication prednisone, which was prescribed in August 2017. He also received an albuterol inhaler for use in case of shortness of breath. As this treatment continued for the next year, Pinkney was sent for periodic visits to the UMMS pulmonary clinic.

By March 2018, a chest x-ray confirmed that Pinkney had no acute cardiopulmonary disease, so Pinkney's prednisone doses were reduced and tapered off. When Pinkney's cough and shortness of breath started to return, tapering was discontinued. In December 2018, when Pinkney's pulmonologist noted that his symptoms were stable, tapering was resumed, and Pinkney stopped taking prednisone by March 2019. In April 2019, UMMS specialists found Pinkney's condition to be stable and recommended that he stay off prednisone, receive a dilated eye exam, and repeat pulmonary function testing in four months.

In his Complaint, Pinkney argues that although in May 2016 he first reported symptoms such as a dry cough, chest pains, and breathing troubles, it took nine months to receive a diagnosis of pulmonary sarcoidosis and 18 months to receive medication for that condition. He also asserts that although he had a lump on his eye and a lump in his testicle, there was no effort to determine whether his sarcoidosis was affecting other organs. Because those conditions disappeared after he received the prednisone treatment, he argues that they were related to sarcoidosis and should have been addressed earlier.

# DISCUSSION

## I.    Motion for Appointment of Counsel

In this Motion, Pinkney seeks appointment of counsel to represent him in this case. "The court may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2018). In civil actions, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012).

Inherent in this analysis is that one's indigence is insufficient to establish exceptional circumstances. Pinkney's proffered reasons in support of his Motion include his inability to find an attorney willing to take his case; the need to present conflicting testimony from expert witnesses at trial; his lack of financial resources; and the difficulty of litigating a case while incarcerated. These factors do not constitute exceptional circumstances. Up to this point, Pinkney has adequately presented his claims to allow the Court to adjudicate them. As discussed below, there is no need for discovery or a trial at which counsel would be necessary. Accordingly, the Motion for Appointment of Counsel will be denied.

## II.    Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

In their Motion, Defendants seek dismissal of the Complaint or summary judgment on the grounds that: (1) Pinkney has not alleged or established sufficient facts to support a claim that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment; and (2) Pinkney's claims of negligence or medical malpractice are not judicially actionable or supported by the evidence.

### A.    Legal Standard

Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded.  Fed. R. Civ. P. 12(d).  Before

converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (internal citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or comparable filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Pinkney has not requested discovery prior to resolution of the Motion, and he has in fact submitted his own exhibits with his memorandum in opposition to the Motion. Accordingly, the Court will analyze the motion as a motion for summary judgment and will assess whether it may grant judgment as a matter of law on the present record.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football*

6

*Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

### B.     Eighth Amendment

Defendants assert that the evidence does not support an Eighth Amendment claim for deliberate indifference to a serious medical need arising from the failure to diagnose and treat Pinkney's pulmonary sarcoidosis. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations

omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Based on the submitted medical records and accompanying medical affidavit, Defendants have established that Pinkney received regular medical examination, testing, and treatment from the time he first reported symptoms in May 2016 and going forward. At the outset, in May 2016, he was provided with the medication guaifenesin to address his symptoms, and over the ensuing months when his symptoms did not subside, he received a series of tests, including chest x-rays in August, September, and October 2017; a pulmonary evaluation at UMMS in October 2017; a CT scan in March 2017; a bronchoscopy and biopsy in June 2017; and an EBUS in July 2017. After there was a more definitive diagnosis of pulmonary sarcoidosis, he received the medication prednisone, which effectively addressed both his lung symptoms and the collateral issues relating to his eye and testicles.

Although it took approximately one year for Pinkney's condition to be definitively identified and for the effective form of medical treatment to be prescribed, and the time periods between the various diagnostic tests were longer than ideal, the medical records firmly demonstrate a consistent and persistent effort to identify and treat Pinkney's condition, which is one that is

notoriously difficult to diagnose. Defendants and other medical personnel tried multiple forms of

testing, and consulted outside specialists, in an effort to pinpoint the cause of Pinkney's symptoms.

Thus, although Pinkney plainly had an objectively serious medical condition, the record, even

viewed in the light most favorable to Pinkney, does not support the conclusion that Defendants

subjectively were aware of his specific condition at an earlier point but acted with deliberate

indifference to that need. *See Johnson v. Quinones*, 145 F.3d 166 (finding no deliberate

indifference even though the doctors failed to diagnose that the plaintiff had pituitary tumor). The

Court will therefore grant the Motion as to the Eighth Amendment claim.

### C.    Negligence

To the extent that the Complaint could also be construed as asserting a state negligence or

medical malpractice claim, Pinkney has not established that this Court has diversity jurisdiction

over such claims because even if the amount in controversy exceeds $75,000, Pinkney has not

shown that he and Defendants are citizens of different states. *See* 28 U.S.C. § 1332(a) (2018);

*Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011)

(holding that diversity jurisdiction "requires complete diversity among parties, meaning that the

citizenship of every plaintiff must be different from the citizenship of every defendant"). Because

the Court will dismiss Pinkney's federal constitutional claim, the Court may, and will, decline to

exercise supplemental jurisdiction over Pinkney's state law claims. *See* 28 U.S.C. § 1367(c)(3).

Thus, the Motion will be granted as to such claims based on the lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Pinkney's Motion for Appointment of Counsel will be DENIED, and Defendants' Motion for Summary Judgment will be GRANTED. A separate Order shall issue.


Date:   January 22, 2020

                                          THEODORE D. CHUANG
                                          United States District Judge